**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
JAMES CONSIGLIO              :      Civ. No. 3:17CV00346(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :      February 26, 2018
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

The plaintiff, James Consiglio, brings this appeal pursuant to §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Acting Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand. [Doc. #17]. Defendant has filed a motion for an order affirming the decision of the Commissioner. [Doc. #22].

For the reasons set forth below, defendant's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED. [Doc. #22].** Plaintiff's Motion to Reverse, or Alternatively, Remand is **DENIED. [Doc. #17].**

## I. __PROCEDURAL HISTORY__

Plaintiff filed an application for DIB, alleging disability beginning November 1, 2010.[1] See Certified Transcript of the Administrative Record, compiled on April 15, 2017 (hereinafter "Tr.") 188-91; Doc. #18 at 2. Plaintiff later amended the alleged onset date to December 4, 2011. See Tr. 80-81; Doc. #18 at 2 n.3; Doc. #22-1 at 2 n.1. Plaintiff's application was denied initially on April 30, 2013, see Tr. 139-41, and upon reconsideration on October 8, 2013, see Tr. 144-46.

On December 23, 2014, plaintiff, accompanied and represented by Attorney Robert Reger, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Robert A. DiBiccaro. See Tr. 74-117. On April 23, 2015, the plaintiff, accompanied and represented by Attorney Reger, appeared and testified at a supplemental hearing before ALJ DiBiccaro. See Tr. 31-73. Vocational Expert ("VE") John Bopp also appeared and testified at the hearing. Tr. 31, 52-69. On August 28, 2015, the ALJ issued a decision finding that plaintiff "was not under a

---

[1] Plaintiff contends that he filed for DIB on January 31, 2013. See Doc. #18 at 2. However, the ALJ's decision and defendant's briefing both indicate that plaintiff filed for DIB on December 12, 2012. See Tr. 13; Doc. #22-1 at 2 n.1. There is conflicting information in the record as to which date is correct. See Tr. 125-127; 188. However, this discrepancy is immaterial, as the parties do not dispute that plaintiff's alleged onset date is December 4, 2011. See Doc. #18 at 2 n.3; Doc. #22-1 at 2 n.1.

disability, as defined in the Social Security Act, at any time from December 4, 2011, the amended alleged onset date, through December 31, 2014, the date last insured[.]" Tr. 24. On January 10, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's August 28, 2015, decision the final decision of the Commissioner. See Tr. 1-3. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by Attorney Reger, filed this timely action for review and now moves to reverse and/or remand the Commissioner's decision. On appeal, the plaintiff asserts that the ALJ made various errors that prevented him from receiving a full and fair hearing.

## II.  STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). Second, the court must decide whether the determination is supported by substantial evidence. See id. Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure

that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit

intelligible plenary review of the record." <u>Williams ex rel.</u>
<u>Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988).
"Moreover, when a finding is potentially dispositive on the
issue of disability, there must be enough discussion to enable a
reviewing court to determine whether substantial evidence exists
to support that finding." <u>Johnston v. Colvin</u>, No.
3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31,
2014).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.
2012). **"[W]hether there is substantial evidence supporting the**
**appellant's view is not the question here; rather, we must**
**decide whether substantial evidence supports <u>the ALJ's</u>**
**<u>decision</u>**." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d
Cir. 2013).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.
42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as

age, education, and work experience; the Secretary
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful
activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's
severe impairment, he has the residual functional
capacity to perform his past work. Finally, if the
claimant is unable to perform his past work, the
Secretary then determines whether there is other work
which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

"Residual functional capacity" ("RFC") is what a person is still

capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (internal quotation marks omitted).

## IV.   THE ALJ'S DECISION

Following the above-described five-step evaluation process, ALJ DiBiccaro concluded that plaintiff was not disabled under the Act. See Tr. 24. First, the ALJ determined that plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2014." Tr. 16. The ALJ then turned to Step One of the evaluation process and found that plaintiff had not engaged in substantial gainful activity from December 4, 2011, the alleged onset date, through his date of last insured of December 31, 2014. See id. At Step Two, the ALJ found that the plaintiff had the following severe impairments through the date

last insured: "cardiopulmonary disease, back pain, obesity and anxiety. Id. at 16.

At Step Three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 17-18. The ALJ specifically considered "Listings 3.02, Chronic pulmonary insufficiency; [] 1.04, Disorders of the spine;" and 12.06, Anxiety and obsessive-compulsive disorders. Id. at 17; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also considered "the potential effects obesity has in causing or contributing to impairments in other body systems in listings sections 1.00Q, 3.00I, and 4.00F." Tr. 17.

Before proceeding to Steps Four and Five, the ALJ determined plaintiff's RFC. The ALJ performed an analysis of the record in accordance with the requirements of 20 C.F.R. §404.1529 and Social Security Rulings ("SSRs") 96-4p and 96-7p. See Tr. 18-19. The ALJ also "considered opinion evidence in accordance with the requirements of 20 [C.F.R. §]404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Id. Upon such review, the ALJ found that plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. §404.1567(a), "involving avoidance of even moderate exposure to dust, gases, fumes and other pulmonary irritants; involving simple instructions and routine, repetitive

tasks; occasional interaction with supervisors, co-workers and the public; and involving the ability to stay on task more than 90% of the workday." Id. at 18.

With these limitations, the ALJ found at Step Four that plaintiff was unable to perform any past relevant work through the date last insured. See Tr. 22. Proceeding to Step Five, however, the ALJ found that there were a significant number of jobs in the national economy that plaintiff could perform. See Tr. 23-24. Therefore, the ALJ found that plaintiff was not disabled within the meaning of the Act during the relevant time period. See Tr. 24.

## V.    **DISCUSSION**

On appeal, plaintiff contends that the ALJ erred in three respects, specifically by:

1. Failing to give proper weight to the opinion of plaintiff's treating physician;

2. Finding that a significant number of jobs exist in the national economy that plaintiff was able to perform; and

3. Not allowing counsel to question the VE regarding his opinion as to whether plaintiff can perform a "significant number" of jobs.

The Court will address each of plaintiff's arguments in turn.

## A.    Treating Physician Rule

Plaintiff contends that the ALJ failed to give proper weight to the opinion of plaintiff's treating physician, Dr. Kevin Twohig ("Dr. Twohig"). See Doc. #18 at 10-12. Plaintiff asserts that the factors set forth in 20 C.F.R. §404.1527(c)(2) support giving more weight to Dr. Twohig's opinion; that the ALJ "fail[ed] to consider Dr. Twohig's opinion ... that [plaintiff]'s COPD/asthma 'can be very labile[;]'" and that the ALJ erred in his consideration of Dr. Twohig's responses to questions proffered (in writing) by the ALJ. Id. Defendant responds that "the ALJ properly considered Dr. Twohig's opinions in accordance with the regulatory framework, and assessed an RFC supported by substantial evidence." Doc. #22-1 at 10.

A treating source's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2). If the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (per curiam). If a treating source's opinion is not given controlling weight, "SSA regulations require the ALJ to consider several factors in determining how

11

much weight the opinion should receive." <u>Greek v. Colvin</u>, 802
F.3d 370, 375 (2d Cir. 2015). "To override the opinion of the
treating physician, ... the ALJ must explicitly consider, <u>inter
alia</u>: (1) the frequency, length, nature, and extent of
treatment; (2) the amount of medical evidence supporting the
opinion; (3) the consistency of the opinion with the remaining
medical evidence; and, (4) whether the physician is a
specialist." <u>Id.</u> (internal citation omitted). "After considering
the above factors, the ALJ must comprehensively set forth his
reasons for the weight assigned to a treating physician's
opinion." <u>Id.</u> (internal quotation marks and citation omitted).
However, a "slavish recitation of each and every factor" is
unnecessary "where the ALJ's reasoning and adherence to the
regulation are clear." <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70
(2d Cir. 2013).

Here, Dr. Twohig provided an opinion letter dated January
21, 2015, stating:

> James Consiglio has moderate COPD/Asthma. This can be
> very Labile. I believe Mr. Consiglio is fully disabled
> from a lung standpoint. FEV1 was 30 percent in 2011[.]
> As of 6/19/2014, FEV 2.09(56%), FVC 67%, FEV1 68%.

Tr. 823. The ALJ decided that it would be helpful to have
additional information regarding Dr. Twohig's opinion, so he
directed plaintiff's counsel to ask Dr. Twohig if plaintiff
could work in a job where he would "have to avoid even moderate

exposure to dust, gases, fumes and other environmental irritants[]" or in a job "where he would avoid all exposure[.]" Tr. 71. Dr. Twohig provided his responses to these inquiries in a letter dated April 23, 2015, indicating that plaintiff could not "perform sedentary work for 8 hours a day in an environment that gives him moderate exposure to ... respiratory irritants[,]" and that plaintiff "must avoid <u>any</u> exposure to ... respiratory irritants." <u>See</u> Tr. 851. The ALJ considered both of these opinions in his decision, but found Dr. Twohig's opinion to be "conclusory and against the weight of the record as a whole." Tr. 21. As a result, the ALJ accorded Dr. Twohig's opinion "diminished evidentiary weight." <u>Id.</u>

The ALJ's decision not to accord controlling weight to Dr. Twohig's opinion was supported by substantial evidence. The record indicates that plaintiff smoked cigarettes at all times relevant to this determination,[2] <u>see</u> Tr. 89-90, 364, 377, 826,

---

[2] The record contains varying statements as to how much plaintiff smoked during the relevant period. During the December 23, 2014, hearing, plaintiff testified that he had been smoking half a pack of cigarettes a day for the last "six to eight months[,]" but that he had previously been smoking a pack and a half of cigarettes a day. Tr. 89-90. In a June 19, 2014, letter, Dr. Twohig described plaintiff as "a heavy, ongoing, cigarette smoker[.]" Tr. 826. A Yale-New Haven Hospital discharge summary dated December 9, 2011, stated that plaintiff smoked "1 to 2 packs per day and ha[d] been smoking for the last 15 to 20 years." Tr. 364. Dr. Twohig noted on May 23, 2011, that plaintiff smoked "between one and a half and two packs of cigarettes a day." Tr. 377.

which does not support Dr. Twohig's opinion that plaintiff must avoid <u>any</u> exposure to respiratory irritants. See <u>Stewart v. Berryhill</u>, No. 16CV4940(CS)(JCM), 2017 WL 2992504, at *1 (S.D.N.Y. July 14, 2017) ("Given that Plaintiff obviously could withstand daily exposure to a known respiratory irritant -- cigarette smoke -- there was nothing arbitrary in the ALJ's finding that Plaintiff could function in an atmosphere that afforded no more than occasional exposure to concentrated respiratory irritants." (internal quotation marks omitted)); <u>see also</u> <u>Dixon v. Berryhill</u>, No. 17CV0334(AJP), 2017 WL 3172849, at *7 (S.D.N.Y. July 26, 2017) (affirming ALJ's decision where the ALJ found the treating physician's opinion regarding plaintiff's respiratory limitations to be less persuasive because the plaintiff's smoking indicated he could tolerate some pulmonary irritants); <u>Roehm v. Comm'r of Soc. Sec.</u>, No. 5:11CV161(NAM)(ATB), 2011 WL 6318364, at *3 (N.D.N.Y. Nov. 28, 2011), <u>report and recommendation adopted</u>, 2011 WL 6326105 (Dec. 16, 2011) (recommending that the Commissioner's determination be affirmed where "[t]he ALJ refused to consider a limitation in plaintiff's exposure to respiratory irritants because it is absurd to limit an individual who is voluntarily inhaling cigarette smoke on a regular basis from respiratory irritants[]" (internal quotation marks omitted)).

There is further evidence in the record supporting the ALJ's decision not to give controlling weight to Dr. Twohig's opinion that plaintiff was "fully disabled from a lung standpoint." Tr. 823. Plaintiff was capable of doing chores and other activities like laundry and washing dishes, see Tr. 105, 223, 249, driving, see Tr. 86, 223, shopping, see Tr. 224, preparing food, see Tr. 250, 268, and helping to care for his elderly father, see Tr. 85, 247. Plaintiff was also able to socialize, see Tr. 106-107, 225, read, see Tr. 224, and watch television, see 108, 224.

The ALJ correctly noted the lack of "contemporaneous medical records showing limitations consistent with" Dr. Twohig's opinion. Tr. 21. Although Dr. Twohig noted after his initial consultation with plaintiff on May 23, 2011, that plaintiff would get short of breath after walking "on the flat ground for about a half a mile" or walking "a flight of stairs[,]" Tr. 377, the treatment records do not document limitations supporting his conclusion that plaintiff was "fully disabled from a lung standpoint[,]" Tr. 823. See Tr. 363, 824, 825-826. The ALJ properly considered this factor in deciding not to give Dr. Twohig's opinion controlling weight. See Ortiz v. Comm'r of Soc. Sec., No. 15CV07602(SN), 2017 WL 519260, at *8 (S.D.N.Y. Feb. 8, 2017) (finding "[s]ubstantial evidence support[ed] the ALJ's conclusion that" the treating physician's

opinion was not entitled to controlling weight "because the
contemporaneous treatment records ... did not support such
severe limitations[]"); Mack v. Astrue, No. 3:09CV2122(JBA),
2011 WL 1215075, at *2 (D. Conn. Mar. 27, 2011) (affirming ALJ's
decision not to afford controlling weight to a treating
physician's opinion that was "not supported by [his]
contemporaneous medical treatment records[]").

The ALJ was correct not to give controlling weight to Dr.
Twohig's conclusion that plaintiff was "fully disabled from a
lung standpoint[,]" Tr. 823, because the Commissioner, not the
treating physician, decides whether plaintiff "meet[s] the
statutory definition of disability[,]" 20 C.F.R.
§404.1527(d)(1); see also Snell v. Apfel, 177 F.3d 128, 133–34
(2d Cir. 1999) ("The final question of disability is ...
expressly reserved to the Commissioner."). For all of these
reasons, the Court finds that substantial evidence supports the
ALJ's decision not to accord controlling weight to Dr. Twohig's
opinion.

Although the ALJ did not explicitly recite all of the
required factors while explaining his assignment of weight to
Dr. Twohig's opinion, see Greek, 802 F.3d 370 at 375, the record
indicates that the ALJ gave proper consideration to the factors.
See Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011)
(finding that "the ALJ gave proper consideration to all relevant

factors pursuant to applicable regulations[,]" despite the failure to expressly discuss one of the factors). The ALJ explicitly "considered opinion evidence in accordance with the requirements of 20 [C.F.R] [§]404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p[.]" Tr. 19. See Dailey v. Comm'r of Soc. Sec., No. 5:14CV1518(GTS)(WBC), 2016 WL 922261, at *7 n.4 (N.D.N.Y. Feb. 18, 2016), report and recommendation adopted sub nom. Dailey v. Colvin, 2016 WL 917941 (Mar. 10, 2016) (holding that "ALJ's 'reasoning and adherence' to the Regulations was clear" where "the ALJ specifically listed the 'treating physician' Regulation in her decision").

The ALJ did not explicitly discuss the frequency, length, nature, and extent of Dr. Twohig's treatment of plaintiff, but the decision reveals that he considered the treatment relationship by citing to Dr. Twohig's treatment records, see Tr. 20-21, and by noting that plaintiff received "little treatment until June 29, 2014, when he saw his pulmonary doctor after not having sought treatment for more than two years[,]" id. at 20. This is sufficient. See Malave v. Berryhill, No. 3:16CV00661(SALM), 2017 WL 1080911, at *8 (D. Conn. Mar. 22, 2017) (determining that "the ALJ implicitly considered the nature and length" of a treating relationship because he considered "treatment notes throughout his decision[]"); Ramos v. Comm'r of Soc. Sec., No. 13CV6561(AJN), 2015 WL 708546, at

*18 (S.D.N.Y. Feb. 4, 2015) ("The ALJ implicitly acknowledged the length of the treatment relationship, and the nature and extent of that relationship[.]").

Even if the ALJ had failed to consider the plaintiff's treatment relationship with Dr. Twohig, this failing would constitute harmless error. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."); Snyder v. Colvin, No. 5:13CV585(GLS)(ESH), 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014) ("[A]dministrative legal error is harmless when the same result would have been reached had the error not occurred."). The record indicates that plaintiff had only four appointments with Dr. Twohig. Plaintiff had an initial consultation with Dr. Twohig on May 23, 2011, at which time Dr. Twohig noted that his COPD was reversible, see Tr. 377-79; a follow-up appointment on December 30, 2011, see Tr. 363; an appointment on January 26, 2012, at which time Dr. Twohig noted that plaintiff had recovered from his recent hospitalization and recommended a follow-up appointment in three months, see Tr. 824; and a two and a half year follow-up appointment on June 19, 2014, at which time Dr. Twohig indicated plaintiff had failed to appear for his three month follow-up appointment after the January 26, 2012, appointment and noted that plaintiff's COPD

had improved significantly, see Tr. 825-26. This limited treatment record weighs against Dr. Twohig's reliability. See Horning v. Colvin, No. 6:14CV0937(GTS), 2015 WL 4078216, at *3 (N.D.N.Y. July 6, 2015) (determining that "the ALJ properly afforded [the treating physician's] opinion 'little weight' based on his limited treatment history and because his opinion was inconsistent with the objective medical evidence in the record"); Donnelly v. Colvin, No. 13CV7244(AJN)(RLE), 2015 WL 1499227, at *12 (S.D.N.Y. Mar. 31, 2015) (deciding that three visits with a treating physician "do not constitute sufficient contact to warrant" affording the physician's opinion more than "some, but not great weight"); Saur v. Astrue, No. 5:11CV1440(GLS), 2013 WL 587390, at *3 (N.D.N.Y. Feb. 13, 2013) (affirming ALJ's decision affording little weight to a treating physician's opinion "due to his limited treatment relationship with" plaintiff).

The ALJ also did not expressly discuss Dr. Twohig's specialty, but he referred to Dr. Twohig as plaintiff's "pulmonary doctor[,]" Tr. 20, and cited to medical records that indicate Dr. Twohig's specialty, id. at 20-21. See Jones v. Colvin, No. 6:16CV443(CFH), 2017 WL 758511, at *5 (N.D.N.Y. Feb. 27, 2017) (finding that the ALJ's reference to records indicating the treating physician's specialty "reflects the ALJ's acknowledgment of [the physician's] apparent specialty");

Plumley v. Comm'r of Soc. Sec., No. 5:15CV1229(GTS)(WBC), 2016
WL 7644866, at *6 (N.D.N.Y. Dec. 8, 2016), report and
recommendation adopted sub nom. Plumley v. Colvin, 2017 WL 44842
(Jan. 4, 2017) (finding ALJ adhered to the regulations despite
failing to specifically mention the treating physician's
specialty because the ALJ discussed the physician's "opinion and
treatment notations"); Petrie v. Astrue, 412 F. App'x at 407-08
(deciding that it was clear from the record that the ALJ
considered the physicians' specialties because he treated their
assessments as "medical opinions of record").

The Court finds substantial evidence supports the ALJ's
assignment of weight to Dr. Twohig's opinion. The ALJ's failure
to specifically mention Dr. Twohig's opinion that plaintiff's
COPD "can be very labile[,]" Tr. 823, does not constitute
reversible error. "[T]he ALJ is not required to mention every
piece of evidence or testimony within a physician's notes or
summarized opinion." Chiesa v. Comm'r of Soc. Sec., No.
1:13CV1102(LEK), 2016 WL 1048996, at *7 (N.D.N.Y. Mar. 11,
2016); see also Daniels v. Berryhill, 270 F. Supp. 3d 764, 775
(S.D.N.Y. 2017) (noting that "an ALJ is not required to address
every aspect of the record in his opinion or comb the record to
reconcile every conflicting shred of medical testimony"
(internal quotation marks omitted)).

While evaluating Dr. Twohig's opinion that plaintiff was "fully disabled from a lung standpoint[,]" Tr. 823, the ALJ correctly observed: "A review of the medical records fails to identify any subjective or objective medical findings supporting a conclusion, which prevents the claimant from all work." Tr. 21. The ALJ did not err by describing Dr. Twohig's conclusion as "prevent[ing] the claimant from all work[,]" rather than using Dr. Twohig's own words that plaintiff is "fully disabled from a lung standpoint." Id. Moreover, any error in this regard would be harmless, as it would not have affected the ALJ's decision to accord Dr. Twohig's opinion diminished weight. See Snyder 2014 WL 3107962 at *4 ("[A]dministrative legal error is harmless when the same result would have been reached had the error not occurred.").

Therefore, the Court finds that substantial evidence supports the ALJ's decision to accord Dr. Twohig's opinion diminished evidentiary weight.

**B.  Significant Number of Jobs**

Plaintiff also argues that the ALJ erred in finding that jobs existed in significant numbers in the national economy that plaintiff could have performed. See Doc. #18 at 13-17. Plaintiff contends that 26,400 jobs in the national economy does not constitute a "significant" number of jobs, and that it was "wholly arbitrary and capricious" for the ALJ to find there were

significant jobs in the national economy after he "conceded that jobs did not exist in significant numbers in the state economy[,]" because there was "virtually no statistical difference between the number of jobs" available. Id. at 17. In response, defendant argues that 26,400 jobs "constitute[s] a significant number[,]" and that "the local numbers are not relevant if the jobs identified by the ALJ exist in significant numbers in the national economy." Doc. #22-1 at 14-15.

Plaintiff bases this argument on a comment made by the ALJ during the April 23, 2015, hearing. See Doc. #18 at 15. After the VE testified that plaintiff could perform about 240 jobs in the local economy, the ALJ commented that "[he] would not find those numbers for local jobs, even in all Connecticut, to be significant." Tr. 70. However, in his written decision, the ALJ held: "The undersigned concludes that the total numbers given for national jobs is significant, notwithstanding that the local numbers may not be, as the national numbers are controlling." Tr. 23-24 n.1. The ALJ is not bound by his oral comment at the hearing, which did not form part of his written decision. See Smith v. Astrue, No. 2:08CV452, 2009 WL 4067393, at *4 (E.D. Va. Nov. 20, 2009) ("The Court thus finds that the ALJ's statements on the record cannot disturb the final written decision.").

Even if the ALJ were bound by his comment, the number of jobs available in the local economy is not relevant, because the

ALJ determined plaintiff could have performed a significant number of jobs in the national economy. See Tr. 24.

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §423(d)(2)(A). "[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether ... [w]ork exists in the immediate area in which you live[.]" 20 C.F.R. §404.1566(a).

The ALJ did not abuse his discretion by finding that 26,400 jobs nationally constitutes a significant number of jobs. See Koutrakos v. Colvin, No. 3:13CV1290(JGM), 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015) ("Within the Second Circuit, courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers, but courts have adopted a relatively low threshold number." (internal quotation marks and citations omitted)). Courts in this Circuit have found fewer than 26,400 jobs in the national economy to constitute a significant number. See, e.g., Lillis v. Colvin, No. 3:16CV269(WIG), 2017 WL 784949, at *6 (D.

Conn. Mar. 1, 2017) (finding 16,770 jobs in the national economy to be significant); Gilmore v. Comm'r of Soc. Sec., No. 7:15CV00837(NAM), 2016 WL 4079535, at *6 (N.D.N.Y. July 29, 2016) (The VE "testified to there being 20,620 jobs in the national economy, which the Court finds 'significant.'"); Gray v. Colvin, No. 12CV6485(DGL), 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (finding "over 16,000 jobs nationally" to be "significant"); Daniels v. Astrue, No. 10CV6510(RWS), 2012 WL 1415322, at *17 (S.D.N.Y. Apr. 18, 2012) (deciding that the "ALJ properly found" that 25,000 jobs was "a significant number of jobs in the national economy").

Accordingly, substantial evidence supports the ALJ's determination that plaintiff could perform a significant number of jobs that existed in the national economy.

**C.    Cross Examination of the VE**

Finally, plaintiff contends his counsel should have been permitted to ask the VE whether he believed there was a "significant" number of jobs in the national economy that plaintiff could perform. See Doc. #18 at 17-18. Plaintiff suggests that the ALJ violated plaintiff's procedural due process right to cross-examine the VE by forestalling this line of questioning. See Doc. #18 at 17-18. In response, defendant states: "It is the job of the ALJ, as the finder of fact, to make a determination as to the significance of these numbers[.]"

Doc. #22-1 at 15. Defendant notes that "the ALJ properly elicited testimony from the [VE] as to the numbers of relevant jobs existing in the national economy." Id.

Plaintiff had a right to cross-examine the VE. See Townley v. Heckler, 748 F.2d 109, 114 (2d Cir. 1984). However, plaintiff "is not entitled to unlimited cross-examination, but rather such cross-examination as may be required for a full and true disclosure of the facts." Carter v. Barnhart, 58 F. App'x 304, 305 (9th Cir. 2003) (internal quotation marks omitted); see also Parks v. Comm'r of Soc. Sec., No. 7:14CV1367(GTS), 2016 WL 590227, at *10 (N.D.N.Y. Feb. 11, 2016) (finding ALJ did not improperly restrict plaintiff's right to cross-examine the VE when the ALJ directed plaintiff to rephrase his hypothetical using vocational terms rather than medical terms).

In this instance, the ALJ barred counsel for plaintiff from asking the VE if "the jobs he cited exist in significant numbers[,]" because it is the ALJ's job to answer that question. Tr. 67. The ALJ and plaintiff's counsel then discussed the relevance of the line of questioning, and counsel explained that he was attempting to give the ALJ a comparison basis to use in deciding "whether this number is significant." Tr. 68. Plaintiff was otherwise permitted to conduct a full cross-examination of the VE. See Tr. 59-72.

The ALJ's refusal to allow plaintiff's question did not violate plaintiff's due process right to cross-examine the VE. It is the ALJ's job -- not the VE's job -- to "determine that significant numbers of jobs exist in the national economy that the claimant can perform." <u>McIntyre v. Colvin</u>, 758 F.3d 146, 151 (2d Cir. 2014); <u>see</u> <u>also</u> <u>Bailey v. Astrue</u>, 739 F. Supp. 2d 1365, 1382 (N.D. Ga. 2010) ("The ALJ determines whether significant jobs exist in the national economy, not the VE."); <u>Brooks v. Barnhart</u>, 133 F. App'x 669, 670 (11th Cir. 2005) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number."); <u>Barker v. Sec'y of Health & Human Servs.</u>, 882 F.2d 1474, 1480 (9th Cir. 1989) ("The ALJ was correct in concluding that the expert's <u>opinion</u> about what constitutes a significant number of jobs is not relevant."); <u>Martinez v. Heckler</u>, 807 F.2d 771, 775 (9th Cir. 1986) ("Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer.").

Accordingly, the ALJ did not err by failing to permit plaintiff to ask the VE to opine regarding whether there were a substantial number of jobs in the national economy that plaintiff could perform.

## VI.  CONCLUSION

For the reasons set forth herein, the ruling of the ALJ is supported by substantial evidence in the record. Therefore, defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #22]** is **GRANTED.** Plaintiff's Motion to Reverse, or Alternatively, Remand **[Doc. #17]** is **DENIED.**

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge on April 28, 2017 [Doc. #12], with any appeal to be made directly to the Court of Appeals. See Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut, this 26th day of February, 2018.


                                    /s/
                        _____
                        HON. SARAH A. L. MERRIAM
                        UNITED STATES MAGISTRATE JUDGE